Alex R. Straus, SBN 321366
alex@whitfieldbryson.com
**WHITFIELD BRYSON LLP**
16748 McCormack Street
Los Angeles, CA 91436
Telephone: (917) 471-1894
Facsimile: (310) 496-3176
*Plaintiff's Attorneys*

*Additional attorneys on signature page*

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA SULTANIS, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP, <br><br> Defendant. | CASE NO.    3:21-cv-167 <br><br> **CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT

Plaintiff, Patricia Sultanis, individually and on behalf of all other similarly situated persons, by her undersigned attorneys, brings this Class Action Complaint against Defendants, Champion Petfoods USA Inc. and Champion Petfoods LP, (collectively referred to herein as "Champion" or "Defendant"), alleging the following based upon personal knowledge, and, as to all other matters, alleges, upon information and belief and investigation of her counsel, as follows:

**NATURE OF THE ACTION**

1.      This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased Defendant's Acana brand petfood marketed and labeled as made with "wild-caught" fish (hereinafter the "Products").[1]

2.      Unbeknownst to Plaintiff and members of the Classes, and contrary to the express representations made on its label, the Products, which claim to be "wild-caught" (the "Wild-Caught Fish Claims") actually contain rainbow trout from industrial fish farms.

3.      As a result of Defendant's unlawful and deceptive conduct, Plaintiff and Members of the Classes have been, and continue to be, harmed by purchasing a product under false pretenses and paying more for it than they otherwise would have, if they would have purchased it at all.

4.      Plaintiff and the Classes bring claims for consumer fraud and unjust enrichment and seek damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

**PARTIES**

5.      Plaintiff Patricia Sultanis is a citizen of the State of California residing in the City of Walnut Creek and is a member of the Classes defined herein. She purchased the Products for her own use during the four years preceding the filing of this Complaint and most recently on July 24, 2017. Plaintiff and members of the Classes suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendant set forth in this Complaint. Plaintiff and members of the Classes would not have purchased the Products had they been accurately labeled.

6.      Defendant Champion Petfoods USA Inc. is incorporated in Delaware and has its

---

[1] The Products at issue in this Complaint: Acana Bountiful Catch Dry Cat Food, Acana Freshwater Fish Formula Dry Dog Food, Acana Grasslands Dry Cat Food, Acana Grasslands Dry Dog Food, Acana Meadowland Dry Dog Food, and Acana Meadowlands Dry Cat Food. Discovery may demonstrate that additional Champion products are within the scope of this Complaint. Plaintiff reserves the right to amend this Complaint to include additional products identified through the course of discovery.

headquarters and principal place of business in Kentucky.

7.      Champion Petfoods LP is a Canadian limited partnership with its headquarters and principal place of business in Alberta, Canada. Defendant Champion Petfoods LP wholly owns, operates, and/or controls Defendant Champion Petfoods USA Inc.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendants are citizens of a different state than most Class Members.

9.      The Court has personal jurisdiction over Defendants because Defendants regularly conduct business in this District and/or under the stream of commerce doctrine by causing products to be sold in this District, including the Products purchased by Plaintiff.

10.     Venue is proper because a substantial portion of the events complained of occurred in this District and this Court has jurisdiction over the Defendants.

## FACTUAL ALLEGATIONS

### *Champion Falsely Marketed the Products as "Wild-Caught"*

11.     Champion produces, processes, markets, labels and distributes the Products throughout the U.S.

12.     The Products are available online and in a variety of retail outlets, including pet stores such Petco.

13.     Champion aggressively marketed the Products to consumers as being made with wild-caught rainbow trout.

14.     For example, Champion's own website advertised its Grasslands dog food as follows: "ACANA Grasslands is brimming with … wild-caught rainbow trout …."



15.     Similarly, Champion's website advertised its Freshwater Fish Formula dog food with the statement: "ACANA Freshwater Fish is packed with whole, wild-caught rainbow trout…."

16.     Another page on Champion's website, titled "Sustainable and Wild-Caught Fish," stated "Our saltwater fish are sustainable and wild-caught from New England's cold and fertile waters, and our freshwater fish from American waters—all whisked to our DogStar Kitchen fresh or raw."

17.     Indeed, as shown in the image below, Champion described its freshwater fish (which includes rainbow trout) as "Fresh, Whole, and Wild Freshwater Fish" and specifically represented that its rainbow trout is "[s]ustainably caught by fishermen we know and trust":



Sustainably caught by fishermen we know and trust, like Dennis of Louisville Fish Company in Louisville, Kentucky, our rainbow trout, blue catfish and yellow perch are sourced from federally inspected facilities and delivered **FRESH or RAW**, without artificial preservatives and brimming with goodness. Sustainably harvested, our freshwater fish are loaded with essential DHA and EPA, Omega-3 fatty acids, and richly nourishing fish protein.

18. Champion likewise boasted about the Wild-Caught Fish Claims on the websites of major retailers such as Amazon and Petco, which consumers would have viewed prior to their purchase of the Products:





19.     Additionally, the packaging of several of the Products were prominently labeled as "brimming" with "wild-caught fish":

20.     Similarly, the packaging of the Freshwater Fish Formula (shown below) boast a picture of a fisherman with the caption "trusted supplier of fresh wild-caught fish":



21.     Champion directs the representations about the Wild-Caught Fish Claims to consumers, like Plaintiff and the members of the Classes, and Champion intends that Plaintiff and members of the Classes read and rely on its representations.

22.     However, contrary to these representations, the Products do not use wild-caught fish, leaving Plaintiff and Members of the Classes having paid a premium for Products that failed to provide the promised benefits.

23.     On information and belief, Champion uses rainbow-trout from Idaho.

24.     The vast majority of rainbow trout sourced from Idaho comes from large industrial fish farms, which means the rainbow trout is not "wild-caught".[2]

---

[2] Idaho Department of Fish and Game, Ask Fish and Game: Commercial source for wild Idaho trout? (June 2, 2014, 3:00 PM MDT), https://idfg.idaho.gov/question/commercial-source-wild-idaho-trout.

25.     In fact, Champion was recently sued by Animal Equality, a nonprofit corporation, for the deceptive marketing and advertising at issue in this Complaint.[3]

26.     According to the *Animal Equality* complaint, Animal Equality commissioned laboratory tests of the Products, which tested positive for ethoxyquin.

27.     Ethoxyquin is a chemical that is widely used as a feed additive in fish farming operations. The presence of trace residues of ethoxyquin in fish products indicates that the fish in the Products were farmed, not wild-caught. Residues of ethoxyquin are not found in wild-caught fish products but are routinely found in farmed fish products.

28.     In the wake of the *Animal Equality* lawsuit, Champion appears to have discontinued all the Wild-Caught Fish Claims.

29.     Accordingly, on information and belief, the rainbow trout used in the Products are industrially farmed, contrary to Champion's "wild-caught" representations.

### *The Wild-Caught Fish Claims are Material to Consumers*

30.     The use of terms such "wild-caught" are powerful statements that are important to consumers.

31.     Indeed, consumers prefer wild-caught fish and believe it is higher-value and higher-animal welfare than farmed fish.

32.     A separate survey of consumers showed significantly more consumers (70%) were interested in buying U.S. wild-caught fish than were interested in buying U.S. farmed fish (47%).[4]

---

[3] *See Animal Equality v. Champion Petfoods USA Inc., et al.*, Case No. 2020CA 003279 (Sup. Ct. D.C.).
[4] https://madison.com/ct/news/local/environment/how-hungry-are-wisconsinites-for-fish-raised-on-local-farms/article_952beb91-b48c-524a-9bed-8e0c823351ed.html.

33. Likewise, respondents to a 2008 survey "generally agreed that wild fish are higher quality and tastier than farmed fish" and believed wild-caught products were superior to farmed seafood.[5]

34. In a study on consumer perceptions of fish welfare and willingness to pay for perceived higher-welfare fish products, researchers found that about 80 percent of the respondents believed wild-caught fish had better animal welfare than farmed fish. The results also showed fish welfare is important to consumers, with 48 percent willing to pay extra for rainbow trout they believed had lived a better life.[6]

35. Food industry experts have identified that consumer preferences regarding human food products are increasingly "carrying over to pet foods."[7]

36. A 2017 survey found that "9 out of 10 Americans say it's important that the pet food they purchase provides transparency of ingredients."[8]

37. Experts have specifically identified that an increase in the number of consumers that want to provide premium food to their pets, including "wild-caught" fish, has caused an increase in national spending on pet food.[9]

***Plaintiff was Deceived by Champion's Wild-Caught Fish Claims***

38. Plaintiff was herself a victim of Champion's mislabeling and false advertising of the Products.

---

[5] https://www.sciencedirect.com/science/article/abs/pii/S0195666313000706?via%3Dihub.
[6] https://www.researchgate.net/publication/254187556_Consumers%27_perception_of_farmed_fish_and_willingness_to_pay_for_fish_welfare.
[7] https://www.foodbusinessnews.net/articles/11818-the-real-customer.
[8] https://www.petfoodindustry.com/articles/6390-of-10-pet-owners-want-pet-food-ingredient-transparency.
[9] https://www.wsj.com/articles/big-food-encounters-familiar-challenges-in-pet-food-aisle-1542018602.

CLASS ACTION COMPLAINT

39.     On July 24, 2017, Plaintiff purchased the Products for consumption by her pets at Chewy.com.

40.     Specifically, Plaintiff purchased the ACANA Meadowland Regional Formula Grain-Free Dry Cat & Kitten Food in the 4 lb bag quantity for $20.99 plus tax.

41.     On each occasion before purchasing the Products, Plaintiff reviewed the Wild-Caught Fish Claims. Plaintiff purchased the Products believing these claims to be true, as stated on the packaging and in Champion's marketing and advertising materials described herein.

42.     Plaintiff would not have purchased the Products had she known that they did not provide the promised ingredients, or at the very least she would not have purchased the Products at the price that it was sold to them.

43.     Plaintiff is in the same Class as all other consumers who purchased Champion's Products during the relevant time period. Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations in respect to the Products. Plaintiff and Class Members would have purchased other petfood products if they had not been deceived by the misleading and deceptive labeling, marketing, and advertising of the product by Defendant.

## TOLLING OF THE STATUTE OF LIMITATIONS

A. Discovery Rule Tolling

44.     Plaintiff could not have discovered through the exercise of reasonable diligence that their Products contained ingredients that were mislabeled within the time period of any applicable statutes of limitation.

45.     Among other things, neither Plaintiff nor the other Class Members knew or could have known that the Products contained mislabeled ingredients, as they did not have the ability to learn, through reasonable diligence, that the ingredients were not "wild caught" as represented to them.

46.     Further, Plaintiff had no knowledge of the mislabeled ingredients as it is not visible to consumers and Plaintiff had no knowledge about the Defendant's unscrupulous conduct. Plaintiff and Class Members did not have the ability to learn of the source of the ingredients within the mislabeled Products until recently. Plaintiff and Class Members could not ascertain the nature of the mislabeled ingredients on their own.

**B. Fraudulent Concealment Tolling**

47.     Throughout the time period relevant to this action, Defendant actively concealed from and failed to disclose to Plaintiff and the other Class members vital information about the Products described herein.

48.     Defendant kept Plaintiff and the other Class members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiff nor the other Class members could have discovered the source of the mislabeled ingredients, even upon reasonable exercise of diligence.

49.     Throughout the Class Period, Ford has been aware that the fish within the Products was not wild caught, resulting in selling the products to Plaintiff and Class Members that was untrue, misleading, and false.

50.     Despite its knowledge of this, Defendant failed to disclose and concealed, and continues to conceal, this critical information from Plaintiff and the other Class members, even though, at any point in time, it could have done so through individual correspondence, media release, or by other means.

51.     Plaintiff and the other Class members justifiably relied on Defendant to disclose the source of the fish within the Products, because this information and ingredient was hidden and not discoverable through reasonable efforts by Plaintiff and the other Class members.

52.     Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and the other Class Members have sustained as a result of the mislabeling and conduct by Defendant, by virtue of the fraudulent concealment doctrine.

**C. Estoppel**

53.     Defendant was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, source, and nature of the Products.

54.     Defendant knowingly concealed the true nature, quality, source, and character of the Products from consumers.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

56.     Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained through discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

> **National Class:** All persons within the United States who purchased the Products for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington and Wisconsin who purchased the Products for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").

> **California Sub-Class:** All persons in California who purchased the Products for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "California Sub-Class").

57.     Excluded from the Classes are Defendant, and any entities in which the Defendant has a controlling interest, Defendant's officers, directors, and employees, any judge to whom this action

is assigned and any member of such judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

58.     Plaintiff reserves the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

59.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

60.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to hundreds of thousands. The number of members of the Classes is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

61.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

        a.      Whether the Products are accurately labeled;

        b.      Whether Defendant had a reasonable basis for making the Wild-Caught Fish Claims;

        c.      Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

        e.      Whether Defendant's actions violate the state consumer fraud statutes invoked below;

f.      Whether Plaintiff and the members of the Classes were damaged by Defendant's conduct;

g.      Whether Defendant was unjustly enriched at the expense of Plaintiff and Class Members;

h.      Whether Plaintiff and Class Members are entitled to injunctive relief.

62.     Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of herself and the other Members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

63.     **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Classes.

64.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Members of the Classes he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

65.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications

that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

66.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised health or medicinal benefits.

67.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if Members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT 1**
**VIOLATION OF THE STATE CONSUMER FRAUD ACTS**
**(ON BEHALF OF THE CONSUMER FRAUD MULTI-STATE CLASS)**

68.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

69.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

70.     Plaintiff and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiff and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

71.     Defendant engaged in unfair and/or deceptive conduct, including, but not limited to making the Free-Run Poultry Claims on the label of the Products and in the course of Defendant's advertising and marketing of the Products with no reasonable basis to do so and when, in fact, those claims are not true.

72.     Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

73.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

74.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT 2**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the California Sub-Class)**

75.    Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

76.    Defendant marketed, sold, and/or distributed the Products, and Plaintiff and Class Members purchased the Products.

77.    Defendant represented in their marketing, advertising, and promotion of the Products that their product contained "Wild Caught Fish".

78.    Defendant made these representations to induce Plaintiff and Class Members to purchase the Products, which did in fact induce Plaintiff and other Class Members to purchase this product.

79.    Accordingly, Defendant's representations that the Products contained "Wild Caught Fish" became part of the basis of the bargain between Defendant and Plaintiff and other Class Members.

80.    The Products did not conform to Defendant's representations and warranties regarding "Wild Caught Fish" because at all relevant times the bags of the Products contained non wild caught fish.

81.    As a direct and proximate result of Defendant's breaches of its express warranties and their failure to conform to the Products' express representations, Plaintiff and members of the Class have been damaged. Plaintiff and Class Members have suffered damages in that they did not receive the product they specifically paid for and that Defendant warranted it to be. In addition, Plaintiff and Class Members paid a premium for a product that did not conform to the Defendant's warranties.

**COUNT 3**
**CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**(On Behalf of the California Sub-Class)**

82.     Plaintiff brings this count on behalf of herself and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

83.     The CLRA prohibits deceptive practices by any business that provides goods, property, or services primarily for personal, family, or household purposes.

84.     Plaintiff and the Class members are "consumers" as defined in California Civil Code § 1761(d).

85.     The Products are "goods" as defined in California Civil Code § 1761(a).

86.     Defendant is a "person" as defined in California Civil Code § 1761(c).

87.     Plaintiff's and the Class members' purchases of the Products are "transactions" as defined in California Civil Code § 1761(e).

88.     Defendant's representations and omissions concerning the quality, benefits and effectiveness of the Products were false and/or misleading as alleged herein.

89.     Defendant's false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

90.     Defendant's false and misleading representations and omissions were made to the entire Class as they were prominently displayed on the packaging of every bag of the Products dog food.

91.     Defendant knew or should have known their representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Class.

92.     Defendant's practices, acts, and course of conduct in marketing and selling the Products were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

CLASS ACTION COMPLAINT

93.     Defendant's false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class members, and violated and continue to violate the following sections of the CLRA:

a.      § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.      § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.      § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.      § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it was not.

94.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

95.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

96.     Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and to each Class member.

97.     As of the date of filing, Plaintiff has not given the required notice to Defendant pursuant to the provisions of Cal. Civ. Code § 1782(a) regarding its unlawful conduct and violation of the CLRA. After the filing of this complaint, Plaintiff will give the requisite notice to Defendant and if after 30 days no response has been received, Plaintiff will seek leave to amend this allegation to seek restitution and actual damages.

98.     Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, their reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

**COUNT 4**
**CALIFORNIA FALSE ADVERTISING LAW ("FAL")**
**(On Behalf of the California Sub-Class)**

99.     Plaintiff brings this count on behalf of herself and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

100.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

101.    It also is unlawful under the FAL to make or disseminate any advertisement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

102.    As alleged herein, the advertisements, labeling, website, policies, acts, and practices of Defendant relating to the Products were and are deceptive and misleading.

103.    As alleged herein, the advertisements, labeling, website, policies, acts, and practices of Defendant misled consumers acting reasonably as to Defendant's representations about quality, benefits, and ingredients of the Products.

104.    Plaintiff suffered injury-in-fact as a result of Defendant's actions as set forth herein because, as a reasonable consumer, he purchased the Products in reliance on Defendant's false and misleading labeling claims concerning the Products' qualities, benefits, and ingredients.

105.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known was untrue, and because Defendant omitted material information from their advertising.

106.    Defendant profited from sale of the falsely and deceptively advertised Products to reasonable but unwary consumers including Plaintiff and the Class, and Defendant has thereby been unjustly enriched.

107.    As a result, Plaintiff, the Class, and the general public are entitled to restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

### COUNT 5
### CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
**(On Behalf of the California Sub-Class)**

108.    Plaintiff brings this count on behalf of herself and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

109.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute business acts and practices.

110.    Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the capacity to deceive reasonable consumers, including Plaintiff and the Class, as to the benefits and ingredients of the Products Products.

111.    Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least: (a) the False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.; (b) the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.; and (c) California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875, et seq.

112.    Unfair: Defendant's conduct with respect to the labeling, advertising, and sale of The Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims, including Plaintiff and the Class.

a.  Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the False Advertising Law and Consumers Legal Remedies Act.

b.  Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

c.  Reasonable consumers, including Plaintiff and the Class, purchased the Products believing they were beneficial and effective as claimed by Defendant when in fact they were not—a fact of which consumers could not reasonably have become aware.

113.   Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

114.   As set forth herein, Defendant's representations and omissions about the quality, benefits, and effectiveness of the Products were and are false and likely to mislead or deceive the public because a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled by Defendant's representations and omissions.

115.   Defendant profited from their sale of the falsely, deceptively, and unlawfully advertised and packaged the Products to unwary consumers.

116.   Defendant's conduct directly and proximately caused and continues to cause substantial injury to Plaintiff and the other Class members. Plaintiff and the Class have suffered injury-in-fact as a result of Defendant's unlawful conduct including but not limited to the damages as described above.

117.     Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.     For Count I: Declaring that this action is a proper class action, certifying the Consumer Fraud Multi-State Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

B.     For Count II: Declaring that this action is a proper class action, certifying the California Sub-Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

C.     For Count III: Declaring that this action is a proper class action, certifying the Classes as requested in Count III, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

D.     Enjoining Defendant from engaging in the unlawful conduct set forth herein;

E.     Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class;

F.     Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

G.     Ordering such other and further relief as may be just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: January 8, 2020

Respectfully Submitted,

By: /s/ *Alex R. Straus*
Alex R. Straus, SBN 321366
**WHITFIELD BRYSON LLP**
16748 McCormack Street
Los Angeles, CA 91436
Telephone: (917) 471-1894
Facsimile: (310) 496-3176
alex@whitfieldbryson.com

Daniel K. Bryson*
J. Hunter Bryson*
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
P.O. Box 12638
Raleigh, NC 27605
Dan@whitfieldbryson.com
Hunter@whitfieldbryson.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com

*Pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Class*

CLASS ACTION COMPLAINT